UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY RUCANO,

                                        Plaintiff,                    9:18-CV-0218
                                                                                (GTS/CFH)

      v.

D. VENETTOZZI, et al.,

                                        Defendants.

APPEARANCES:

ANTHONY RUCANO
11-A-0528
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

GLENN T. SUDDABY
Chief United States District Judge

**DECISION AND ORDER**

**I.    INTRODUCTION**

Pro se plaintiff Anthony Rucano commenced this civil rights action in February 2018. Dkt. No. 1. In a Decision and Order issued May 24, 2018, this Court granted plaintiff's application for in forma pauperis status and reviewed the sufficiency of the complaint. Dkt. No. 10 (the "May Order"). On the basis of that review, the Court found that certain defendants were required to respond to a discrete number of claims asserted in the complaint but that the remaining claims should be dismissed. *Id.* at 31-32. After defendants were served and filed their answer, plaintiff filed an amended complaint. Dkt. No. 25 ("Am. Compl."). Pursuant to its obligation under 28 U.S.C. §§ 1915, 1915A, the Court issued a

Decision and Order following its review of the Amended complaint for sufficiency. *See* Dkt. No. 35 ("October Order"). In the October Order, the Court concluded that the Amended complaint should be accepted only insofar as it reasserted the same claims that survived initial review of the original complaint but that the remaining causes of action should be dismissed. October Order at 8, 18.

Currently pending before the court is a motion for reconsideration of the October Order. Dkt. No. 36 ("Recon. Mtn.").

## II.    SUMMARY OF AMENDED COMPLAINT

Plaintiff was elected as Secretary of the Inmate Liaison Committee ("ILC") in November 2015 while he was confined in Clinton Correctional Facility ("Clinton C.F."). Am. Compl. at 12. As a result of plaintiff's actions on the ILC, including raising concerns to prison officials on the behalf of other inmates, defendant Kowalowski, the ILC staff advisor, notified defendant Captain Bishop, who directed defendant Sergeant King to issue plaintiff a false inmate misbehavior report ("IMR"). *Id.* at 16. The IMR was dated January 29, 2016, and the ensuing disciplinary hearing occurred between February 4-11, 2016, with defendant Lieutenant Durkin acting as the hearing officer at Clinton C.F. *Id.* at 16-19. Defendant Durkin was not familiar with the disciplinary procedures, and defendant Clinton C.F. Superintendent Kirkpatrick's appointment of defendant Durkin as a hearing officer was an effort to "railroad[]" plaintiff as part of an "ongoing conspiracy." *Id.* at 17. At the conclusion of the disciplinary hearing, plaintiff was found guilty and sanctioned to 90 days confinement in the Special Housing Unit ("SHU") and loss of privileges. *Id.* at 19. Plaintiff appealed the hearing determination, and on March 15, 2016, defendant Acting SHU Director Rodriguez reduced the penalty to 45 days SHU confinement and loss of privileges, with 45 days suspended. *Id.*

2

at 21.  On April 6, 2016, defendant Rodriguez reversed the determination.  *Id.*  For the sake of efficiency, the Court will refer to the foregoing factual allegations as "the February 2016 Disciplinary Proceeding."

On February 18, 2016, plaintiff submitted a grievance alleging that the IMR issued against him in January 2016 was in retaliation for his ILC activities.  Am. Compl. at 9, 20.  On February 28, 2016, two days after the grievance was denied, plaintiff received a second false IMR accusing him of possession of a weapon.  *Id.* at 20-21.  Defendant Correctional Officers ("C.O.") Breyette and Tucker discovered the weapon in plaintiff's cell, and defendant Bishop authored an Unusual Incident report.  *Id.* at 21-22.  Defendant Captain Devlin conspired with defendant Bishop to "fabricate" the IMR.  *Id.* at 23.  Defendant Bishop presided over the disciplinary hearing in March 2016 concerning the IMR, which took place in Upstate Correctional Facility ("Upstate C.F."), where plaintiff was confined at the time.  *Id.* at 22.  Because defendant Bishop was employed at Clinton C.F. at the time of the hearing, it was out of the ordinary for him to act as the hearing officer at Upstate C.F., especially considering he wrote the Unusual Incident report concerning the matter.  *Id.*  At the conclusion of the hearing, plaintiff was found guilty and sanctioned to 120 days in SHU confinement, with 30 days suspended, and four months loss of good time credits.  *Id.* at 28.  Plaintiff's appeal of the hearing determination was initially affirmed by defendant SHU Director Venettozzi on June 13, 2016, but defendant Venettozzi reduced the sanction to 90 days SHU confinement and loss of privileges.  *Id*. at 34.  Plaintiff thereafter appealed the determination in Albany County Supreme Court pursuant to New York Civil Practice Law and Rules Article 78 ("Article 78").  *Id.* at 40.  After the briefing in the Article 78 proceeding was complete, defendant Venettozzi administratively reversed the disciplinary hearing determination on July 13, 2017.

*Id.* at 42. The Court will refer to the foregoing factual allegations as "the March 2016 Disciplinary Proceeding."

Officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS") have promulgated a "policy, procedure, and practice" that results in disciplinary hearing determinations being affirmed on initial appeal but then reversed only when an inmate commences an Article 78 proceeding challenging the determinations. Am. Compl. at 60-65. This results in inmates serving most or all of the disciplinary sanction before the determination is reversed. *Id.* Defendants Venettozzi and Rodriguez adhered to this policy in affirming plaintiff's appeals of the February and March 2016 disciplinary hearing determinations. *Id.*

On or about August 20, 2017, plaintiff filed a separate Article 78 proceeding in Wyoming County Supreme Court seeking redress for defendant Venettozzi's 13-month delayed reversal of the disciplinary hearing determination rendered in connection with the March 2016 Disciplinary Proceeding. Am. Compl. at 50. On January 20, 2018, plaintiff filed a "first amended and verified complaint seeking class action and declaratory relief" in the Article 78 proceeding. *Id.* at 51. In retaliation for filing that amended complaint, defendant Bishop thereafter instructed Attica C.F. Law Library Supervisor Hembrook (who is not a named defendant) to terminate plaintiff from his job in the Attica C.F. law library, and plaintiff was accordingly "placed on program hold and prevented from working in the law library, and denied law library access for almost [two] weeks" beginning on February 9, 2018.[1] *Id.* at 51-

---

[1] Plaintiff was also placed in Aggression Rehabilitation Treatment ("ART") to conceal the fact that removing him from his law library job and placing him on a program hold constituted retaliatory conduct. Am. Compl. at 52. Plaintiff returned to his job in the law library in April 2018, following completion of ART. *Id.* at 54.

4

52.  Four days later, plaintiff witnessed defendant Joey Clinton, the Deputy Superintendent of Programs at Attica C.F., "with [defendant] Bishop" in Attica C.F.  *Id.* at 52.  Approximately two weeks after plaintiff was removed from his law library job, he discovered that the petition for a writ of habeas corpus that he had been researching and drafting for months was missing from the computer he used as a law library clerk.  *Id.* at 53.

On or about April 6, 2018, plaintiff requested that he be transferred to "the downstate [New York] region."  Am. Compl. at 53.  Plaintiff's request was granted on or about April 9, 2018.  *Id.* at 54; *see also* Am. Compl. Exhs. at 33.  On April 19, 2018, plaintiff spoke to defendant Roberts, the AAG appearing on behalf of the respondent in the Wyoming County Supreme Court Article 78 proceeding.  Am. Compl. at 54.   Plaintiff told defendant Roberts that he would stipulate to a dismissal of the Article 78 proceeding "<u>after</u> [he] was transferred" specifically to Sing Sing Correctional Facility ("Sing Sing C.F.").[2]  *Id.* (emphasis in original).  On the same date, plaintiff signed a release and settlement of the Article 78 proceeding, agreeing to release and discharge respondent from all claims in exchange for approval of plaintiff's "area of preference transfer" within 30 days.  *Id.* at 54-55; Am. Compl. Exhs. at 38-39.  The release did not specify that plaintiff would be transferred to Sing Sing C.F.  *Id.*  Plaintiff was thereafter transferred to Green Haven Correctional Facility ("Green Haven C.F.").  Am. Compl. at 55.  On or about May 24, 2018, after plaintiff inquired into the status of his Article 78 proceeding, plaintiff received a letter from Wyoming County Supreme Court stating that his "matter" was closed "without an order and/or a decision" due to plaintiff's settlement.  *Id.* at 57.

---

[2] In a letter to defendant Roberts dated April 2, 2018, plaintiff also specifically requested to be transferred to Sing Sing C.F.  Am. Compl. Exhs. at 24.

5

Liberally construed, the amended complaint asserts the following causes of action:

(1) Retaliation and conspiracy against defendants Bishop, Durkin, King, Kirkpatrick, Kowalowski, and Rodriguez concerning the February 2016 Disciplinary Proceeding ("First Claim for Relief");

(2) Retaliation, due process, and conspiracy against defendants Bishop, Breyette, Devlin, Kirkpatrick, Rodriguez, Tucker, Uhler, and Venettozzi concerning the March 2016 Disciplinary Proceeding ("Second Claim for Relief");

(3) Due process and equal protection against defendants Annucci, Rodriguez, and Venettozzi concerning the reversal of the March 2016 Disciplinary Proceeding determination and the DOCCS's practice of reversing disciplinary hearing determinations only if and when an inmate files an Article 78 proceeding ("Third Claim for Relief");

(4) Retaliation, due process, and conspiracy against defendants Annucci, Bishop, Gregory, Kelsh, Kirkpatrick, Pelo, Uhler, and Wilcox concerning defendants' interference with grievances plaintiff filed regarding the February and March 2016 Disciplinary Proceedings ("Fourth Claim for Relief");

(5) Retaliation, due process, conspiracy, and equal protection against defendants Annucci, Bishop, Clinton, and Maher concerning the removal of plaintiff from his law library job at Attica C.F. and placing him on a program hold ("Fifth Claim for Relief");

(6) Retaliation and conspiracy against defendants Annucci, Bishop, Maher, McGrath, Roberts, and John Doe #1 concerning plaintiff's request to transfer prison facilities. ("Sixth Claim for Relief").

Am. Compl. 69-77.

## III. DISCUSSION

### A. Legal Standard

Plaintiff's motion implicates Rule 7.1(g) of the Local Rules of Practice for this Court, which provides, in pertinent part, as follows:

> **Motion for Reconsideration.** Unless Fed. R. Civ. P. 60 otherwise governs, a party may serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2) . . . . The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

N.D.N.Y. L.R. 7.1(g) (emphasis in original).[3] In this district, reconsideration of an order entered by the court is appropriate upon a showing of "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R.1, 3 (N.D.N.Y. 1995); *see also Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 244 (N.D.N.Y. 2002); *Sumner v. McCall*, 103 F. Supp. 2d 555, 558 (N.D.N.Y. 2000) (Kahn, J.).

The benchmark for seeking reconsideration of a court's order has been described as demanding. *In re C-TC 9th Ave. P'ship*, 182 B.R. at 2. A motion for reconsideration is not a vehicle through which a losing party may raise arguments that could have been presented

---

[3] Parenthetically, Rule 60 of the Federal Rules of Civil Procedure does not apply in this case, where the October Order, which was issued pursuant to the Court's obligation under 28 U.S.C. §§ 1915, 1915A, is not a final one. *See, e.g., Makas v. New York State Dep't of Motor Vehicles*, No. 97-CV-1892, 1998 WL 219588, at *1 n.1 (N.D.N.Y. Apr. 29, 1998) ("This motion for reconsideration is not made pursuant to Rule 60(b) of the Federal Rules of Civil Procedure because [that rule] only applies to final judgments and orders."). Instead, reconsideration is properly sought under rule 7.1(g) of the local rules. *Douglas v. N.Y.S. Adirondack Park Agency*, No. 10-CV-0299, 2012 WL 5364344, at *4 (N.D.N.Y. Oct. 30, 2012).

earlier but for neglect, nor is it a device "intended to give an unhappy litigant one additional chance to sway the judge." *Brown v. City of Oneonta, N.Y.*, 858 F. Supp. 340, 342 (N.D.N.Y. 1994) (quotation marks omitted). To qualify for reconsideration, "[t]he moving party [must] point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995).

**B.   Analysis**

### 1. Third Claim for Relief (Am. Compl. at 71)

In his motion, plaintiff contends that the amended complaint sufficiently states a procedural due process claim against defendants Annucci, Rodriguez, and Venettozzi in his Third Claim for Relief. Recon. Mtn. at 2-6. Plaintiff's motion, however, merely reiterates the allegations contained in the amended complaint, which the Court carefully considered in issuing the October Order. In particular, the amended complaint alleges that the March 2016 disciplinary hearing determination was initially affirmed and then administratively reversed after he served his disciplinary sentence and after he filed an Article 78 proceeding. According to plaintiff, the affirmance and later reversal was in accordance with an alleged DOCCS policy or practice to affirm disciplinary hearing determinations in the first instance but then reverse them if, and only if, an inmate challenges the determination in an Article 78 proceeding. Plaintiff's motion for reconsideration provides no new grounds for modifying the Court's earlier conclusion concerning the due process claims asserted against defendants Annucci, Venettozzi, and Rodriguez arising from allegations of the existence of that DOCCS policy. Instead, plaintiff argues that the Court erred in determining that the due process claims

arising out of the March 2016 Disciplinary Proceeding survive initial review but dismissing the due process claims arising out of allegations of some alleged DOCCS policy or practice. The nature and content of the due process claims, however, are distinct, as discussed in the October Order. October Order at 9-13. Accordingly, plaintiff's motion is denied insofar as it asks the Court to reconsider his due process claims based on allegations of a DOCCS policy or practice.

Additionally, as it relates to defendant Annucci, as discussed in the May Order, the personal involvement of a defendant is a prerequisite to any Section 1983 claim. May Order at 11-12. Plaintiff's original complaint failed to allege any facts plausibly suggesting that defendant Annucci was personally involved in the alleged due process violations that occurred during the March 2016 Disciplinary Proceeding. *Id.* at 25-26. The only new allegation in the amended complaint related to defendant Annucci is that he delegated his authority to defendants Venettozzi and Rodriguez to "investigate, review and decide Tier III Supt. Hearings on administrative appeal." Am. Compl. at 61. It is well settled in this circuit, however, that a supervisor's delegation of authority to subordinates for investigation or otherwise is not sufficient to establish personal involvement. *See, e.g., Harrison v. Fischer*, No. 08-CV-1327, 2010 WL 2653629, at *5 (N.D.N.Y. June 7, 2010), *adopted by* 2010 WL 2653477 (N.D.N.Y. June 29, 2010). Although plaintiff's motion for reconsideration also alleges that defendant Annucci was aware of the alleged DOCCS policy resulting in disciplinary determinations being initially affirmed but then reversed after inmates filed Article 78 proceedings, Recon. Mtn. at 5, the amended complaint does not contain the same factual allegations. In addition, even assuming the amended complaint alleged defendant Annucci was aware of the policy, such allegations are vague and conclusory and are not sufficient to

9

plausibly suggest the personal involvement of defendant Annucci. Notably, in contrast to the allegations against defendant Annucci concerning the alleged unconstitutional March 2016 Disciplinary Proceeding, *see, e.g.,* Am. Compl. at 36-37, Exhs. Part 4 at 173-87, the allegations concerning defendant Annucci's alleged complicity with the DOCCS policy are unaccompanied by any specific allegations and/or exhibits suggesting that plaintiff put defendant Annucci on notice of the policy. Am. Compl. at 60-65, 71. For all of these additional reasons, plaintiff's motion for reconsideration is denied with respect to the due process claims asserted against defendant Annucci concerning a DOCCS policy.

### 2. Fourth Claim for Relief (Am. Compl. at 72)

Plaintiff asks the Court to reconsider its conclusion concerning the causes of action asserted in the Fourth Claim for Relief, as listed in the amended complaint. Recon. Mtn. at 6-10. After carefully considering the amended complaint, plaintiff's arguments, and the Court's May and October Orders, the Court find no basis to disturb its earlier findings. The Fourth Claim for Relief includes retaliation, due process, and conspiracy claims concerning the processing and appeal of two grievances plaintiff filed at Clinton C.F. and Upstate C.F. Am. Compl. at 72. Many of the underlying factual allegations supporting those causes of action, however, are part and parcel to the claims that have survived initial review concerning the February and March 2016 Disciplinary Proceedings. To the extent the allegations supporting the causes of action listed in the Fourth Claim for Relief also support the causes of action arising out of the February and March 2016 Disciplinary Proceedings that survived initial review, those claims are not, and never have been, dismissed and will proceed in the action.

With respect to the other factual allegations purportedly supporting the claims asserted in the Fourth Claim for Relief, as discussed in the May Order, they are not sufficient to give rise to a cognizable constitutional claim. In particular, plaintiff is preoccupied by his allegations that certain defendants interfered with his ability to file grievances. *See, e.g.,* Recon. Mtn. at 7 ("My first amended complaint . . . clearly and sufficiently allege not only a non-existent . . . investigation, but the intentionally improper assignment of class code 28 'dismiss MBR,' instead of code 49 'false MBR/retaliation[.]'") and 9 (alleging certain defendants intentionally frustrated and manipulated the processing of his grievances). As discussed in the May Order, the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *DeSahney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989). Indeed, there is no constitutional right of access to the established inmate grievance process. *Davis v. Buffardi*, No. 01-CV-0285, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2003); *Shell v. Brzezniak*, 365 F. Supp. 362, 369-70 (W.D.N.Y. 2005). Accordingly, any claims asserted in the second amended complaint concerning the interference with or failure to investigate any of plaintiff's grievances fails as a matter of law. Plaintiff's motion for reconsideration is therefore denied with respect to the Fourth Claim for Relief.

### 3. Fifth Claim for Relief (Am. Compl. at 73-75)

Plaintiff's motion next asks the Court to reconsider its analysis concerning the retaliation claims asserted against defendants Bishop, Clinton, Annucci, and Maher with respect to the allegations that those individuals retaliated against plaintiff by being removing him from his law library job at Attica C.F., placing him on a program hold, and deleting his

11

legal work from a computer in the law library.  Recon. Mtn. at 11-14.  Plaintiff's motion merely reiterates the allegations in the amended complaint, which the Court carefully considered in issuing its October Order.  Because plaintiff's motion provides no grounds for reconsidering the Court's earlier conclusion concerning the retaliation claims asserted in the Fifth Claim for Relief against defendants Bishop, Clinton, Annucci, and Maher, the motion is denied in that respect.

### 4. Sixth Claim for Relief (Am. Compl. at 76-77)

Finally, plaintiff contends that the Court erred in dismissing the claims asserted in the Sixth Claim for Relief.  Recon. Mtn. at 15.  In particular, plaintiff argues that the Court misapprehended the claims as asserted in the amended complaint because he characterized the claims as "Malignant Utilization of the Transfer Process," rather than "retaliation," as asserted in his original complaint.  *Id.*  Recharacterizing a cause of action, however, does not change the sum and substance of the underlying allegations.  The amended complaint alleges that plaintiff was unlawfully retaliated against for exercising his First Amendment rights by not being transferred to Sing Sing Correctional Facility.  *See, e.g.,* Am. Compl. at 51-59.  However plaintiff would like to characterize this claim, it fails for the same reasons discussed in the May Order.  More specifically, although plaintiff is correct that prison officials may not transfer an inmate solely in retaliation for the exercise of constitutional rights, *Meriweather v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989), prisoners do not have a constitutionally protected right to be housed in a particular facility.  *Olim v. Wakineokona*, 461 U.S. 238, 245 (1983); *McMahon v. Fischer*, 446 F. App'x 354, 356 (2d Cir. 2011).  Plaintiff initiated the transfer process by submitting a request for a transfer on or about April 6, 2018.  Am. Compl. at 53.  His request was granted on or about April 9, 2018.  *Id.*; *see also* Exhs. Part 4 at 33.  Plaintiff was

transferred to Green Haven Correctional Facility approximately two weeks later. Am. Compl. at 55; Exhs. Part 4 at 54. That plaintiff was not transferred to his first choice of prison facilities does not render the transfer adverse action for purposes of a constitutional claim. Moreover, the transfer was part of a settlement agreement in connection with the Article 78 proceeding in Wyoming County. In particular, plaintiff extended an offer to defendant Roberts, the Assistant New York State Attorney General assigned the Wyoming County Article 78 proceeding, to discontinue the action in exchange for a transfer. Exhs. Part 4 at 24. Defendant Roberts accepted that offer in a letter dated April 19, 2018, and plaintiff signed a release on April 20, 2018, discharging the respondents named in the Article 78 proceeding from all claims and liability "in consideration of the receipt of an area preference transfer approval and relocation within thirty days[.]" *Id.* at 38-39. Plaintiff's allegations that the decision to transfer him to Green Haven C.F., rather than Sing Sing C.F., stemmed from retaliatory animus on the part of defendants Annucci, McGrath, Maher, Roberts, Bishop and/or John Doe #1 are merely speculative and cannot support a plausible retaliation claim in light of the totality of the allegations in the amended complaint, as well as the exhibits attached thereto. Accordingly, plaintiff's motion for reconsideration of the claims asserted in the Sixth Claim for Relief is denied.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion for reconsideration (Dkt. No. 36) is DENIED; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: January 9, 2019
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge